**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAMAL MAY,** on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:22-CV-02530<br>) |
| v. | ) Judge Virginia M. Kendall<br>) |
| **WORLD AUTOMOTIVE JOLIET LLC,** | )<br>) |
| Defendant. | )<br>) |

**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff JAMAL MAY ("Plaintiff") makes this FIRST AMENDED CLASS ACTION COMPLAINT for himself, and others similarly situated ("the Class"), for injunctive and compensatory relief against WORLD AUTOMOTIVE JOLIET LLC ("WORLD KIA JOLIET" or "Defendant"), and states as follows:

**NATURE OF ACTION**

1. Car loan applicants have a right to know how car dealerships use their private information and whether their credit applications have been judged fairly. When WORLD KIA JOLIET completes credit applications for customers, Defendant does not disclose a privacy policy, the right to opt out of Defendant's privacy practices, or why an application has been declined.

2. Defendant's credit practices conceal the negative effect that Defendant's application process has on customer creditworthiness – including lower credit scores and credit reporting that remains visible to lenders, insurance brokers, and potential employers for years.

3. On August 16, 2021, Plaintiff applied for a car loan with WORLD KIA JOLIET to finance a possible car purchase. In doing so, Plaintiff relied on representations on Defendant's website that applying for a loan with Defendant "Does NOT Affect Your Credit" and "any credit pulls will be soft pulls, which will not affect your credit score."

4. After Plaintiff applied for the loan, Defendant shared Plaintiff's loan application with lenders who made credit inquiries that affected Plaintiff's creditworthiness. Plaintiff did not consent to share his application with these lenders. Defendant did not disclose a privacy policy or allow Plaintiff to opt-out of Defendant's privacy practices.

5. On August 18, 2021, Plaintiff visited Defendant's dealership to shop for a car. However, Defendant's finance department and Defendant's lending partners had already decided that Plaintiff was not creditworthy. Defendant's sales agents refused to show Plaintiff cars, discuss Plaintiff's loan application, or explain the basis for the credit decision.

6. In doing so, Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, (Count I), the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, (Count II), and the Illinois Consumer Fraud Act ("Illinois CFA"), 815 ILCS 505/1 *et seq.*, (Count III).

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff is a natural person and citizen of Illinois.

8. Defendant is a domestic limited liability company.

9. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction because Plaintiff's FCRA and ECOA claims arise under the laws of the United States.

10. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction because Plaintiff's Illinois CFA claim forms part of the same controversy.

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper because events and omissions giving rise to the claims occurred in this district. Venue is proper in this district because Defendant is an Illinois entity and can be found, has agents, and transacts business in this district.

## FACTUAL ALLEGATIONS

12. Threats of inaccurate credit reporting are concerning to Plaintiff because Plaintiff believes his credit history affects his quality of life, including whether he qualifies for loans, insurance, rental housing, and passes employment background checks.

13. Plaintiff monitors his credit reports for accuracy through several services, including a service called Credit Karma. Credit Karma sends alerts to Plaintiff's cellphone when a person or company makes an inquiry into his credit reports.

14. When a person or company makes an inquiry into a consumer's credit report, the inquiry is characterized as either a "hard" or "soft" inquiry.

15. A hard inquiry is a request for a consumer's credit report that remains visible on the report to lenders, potential employers, or other users of credit reports. Hard inquiries affect consumer credit scores, which are used to determine creditworthiness.

16. A soft inquiry is not visible to lenders, potential employers, or other users of credit reports. Soft inquiries do not affect consumer credit scores or creditworthiness.

17. Plaintiff's use of Credit Karma costs money, which includes the price of Plaintiff's cellphone, service charges, and charges for maintaining a sizable data plan.

18. Defendant is a car dealership that claims to serve the Chicago metropolitan area.

19. On August 16, 2021, Plaintiff visited Defendant's website and either submitted a loan application on Defendant's website or through a third-party marketing vendor.

20. At the time, loan applications submitted on Defendant's website were not evaluated by Defendant but were evaluated by an unaffiliated company called iPreCheck.

21. When iPreCheck evaluates a loan application, iPreCheck pre-screens the applicant's TransUnion credit report for minimum credit requirements.

22. Applicants who pass iPreCheck's pre-screening process may receive an offer of credit that contains an approximate loan amount, loan term, and interest rate.

23. The offer is a "firm offer of credit" as defined by the FCRA.

24. The offer provides that Defendant agrees to arrange credit to purchase a vehicle if the applicant's credit is the same or better than at the time of pre-screening and if the applicant meets additional credit requirements stated in the offer.

25. The offer originates from Defendant and not iPreCheck, whose terms of use state, "the offer originates from the Dealer and/or the Dealer's affiliates."

26. When Plaintiff made the application, Plaintiff relied on Defendant's website to inform Plaintiff about Defendant's privacy policy and use of hard inquiries.

27. The "Apply for Financing" page of Defendant's website states, "Only Last 4 of SSN Required," "Safe & Secure," and "Does NOT Affect Your Credit."

28. The website also states through hypertext link, "any credit pulls will be soft pulls, which will not affect your credit score" and "[t]the information you provide to iPreCheck will be shared with the data provider, TransUnion, and the Dealer. Refer to TransUnion and the Dealer regarding their handling of your information."

29. Defendant's website does not state Defendant's policy regarding the handling of information about loan applicants through iPreCheck or third-party marketing vendors.

30. Defendant's website does not state a privacy policy or provide loan applicants with notice of the right to opt out of Defendant's privacy practices.

31. After submitting the application, Plaintiff received notice from Defendant that Plaintiff had been approved for a loan.

32. A sales agent of Defendant phoned Plaintiff within minutes of the notice and asked for Plaintiff's social security number to verifying Plaintiff's identity.

33. The sales agent told Plaintiff that Plaintiff still needed to meet minimum credit requirements for the loan and requested Plaintiff's income and employment information.

34. While discussing the potential car sale, the sales agent completed a second credit application for Defendant's finance department.

35. Defendant's sales agent completed the application during normal business hours.

36. In making the application, Defendant's sales agent shared Plaintiff's nonpublic information with TransUnion to request Plaintiff's credit report.

37. Defendant's sales agent did not disclose a privacy policy or give Plaintiff notice of the right to opt out of Defendant's privacy practices before requesting Plaintiff's credit report.

38. Plaintiff learned about the request for his credit report through a notification from Credit Karma that WORLD KIA JOLIET made a hard inquiry into his TransUnion credit report.

39. Plaintiff sought to protect his creditworthiness from the negative impact of hard inquires, which he believed required written permission.

40. After the agent reviewed Plaintiff's credit application, the agent indicated that the application was approved. Plaintiff avoided discussion about the hard inquiry to maintain a friendly business relationship in anticipation of a potential sale.

41. Plaintiff's credit application had not been approved.

42. When a car dealership completes a credit application for a customer, the dealership decides to either deny the application, approve the application, or tentatively attempt to arrange financing by shopping the application to potential lenders.

43. The process of shopping a credit application to potential lenders is highly automated and lending decisions can be made in near real-time.

44. Defendant decided not to offer Plaintiff financing or attempt to arrange financing for Plaintiff by shopping his credit application to potential lenders on August 16th.

45. After Defendant declined Plaintiff's credit application on August 16th, Defendant failed to give Plaintiff written notice of "adverse action" as defined by the ECOA.

46. Defendant's management is aware or should be aware of systems, procedures, or training programs to provide "adverse action" notice as defined by the ECOA.

47. On August 18, 2021, Plaintiff visited Defendant's dealership with an electronic copy of the loan offer on his cellphone. Plaintiff showed the offer to an employee and requested a sales agent to show Plaintiff cars.

48. While Plaintiff waited for a sales agent, Plaintiff began receiving alerts from Credit Karma about hard inquiries into his Equifax, Experian, and TransUnion credit reports.

49. Defendant's agents were sharing Plaintiff's nonpublic information with car lenders who were then making hard inquiries into Plaintiff's credit reports.

50. Plaintiff had not agreed to buy a car.

51. Plaintiff did not authorize Defendant to share his information with car lenders.

52. Before sharing Plaintiff's information, Defendant's agents did not disclose a privacy policy or give Plaintiff notice of the right to opt out of Defendant's privacy practices.

53. Users of credit reports can see when an applicant has applied for a car loan and whether the applicant received the credit that was applied for.

54. After the employee returned, the employee stated that no sales agents were available, and that Defendant would not honor the loan offer. The sales staff refused to show Plaintiff their car inventory or allow him to test drive vehicles.

55. After failing to secure financing for Plaintiff on August 18th, Defendant did not give Plaintiff written notice of "adverse action" as defined by the ECOA.

56. Plaintiff's experience at WORLD KIA JOLIET is not unique. Defendant's management knows or should know of similar occurrences.

57. Defendant's agents engage customers through social media on Yelp. In Yelp's review section, some customers leave reviews regarding Defendant's credit practices.

58. Around the time of Plaintiff's experience, one Yelp reviewer stated, "Basically regardless of them 'hooking' you in with all these lies about how they don't have to run your credit, went through our employment, credit and etc. They still did."

59. During the same time, one Yelp reviewer stated, "Worse place to get a car they run your credit no matter what you tell them and on top of that they don't care to make nothing right like this isn't your life their trying to ruin all because they want commission from a sale!!!!"

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Class which Plaintiff seeks to represent is defined as follows:

  The Class: All persons from whom Defendant took completed credit applications, obtained consumer credit reports, but whose credit applications were declined by Defendant without notice of a privacy policy, notice of the right to opt out, and notice of adverse action during the applicable statute of limitations period.

61. Excluded from the Class are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, and any Judge to whom this action is assigned, or such Judge's staff and immediate family.

62. Numerosity for the Class is satisfied because there are thousands of members of the Class. Members of the Class are identifiable through Defendant's records and databases. Individual joinder of these members is impracticable.

63. There are questions of law and fact that are common to Plaintiff and the Class that predominate over questions affecting only individual members, including but not limited to:

  a. Whether Defendant violated the FCRA by failing to provide notice of adverse action to Plaintiff and the Class as required by the FCRA;

  b. Whether Defendant violated the ECOA by failing to provide notice of adverse action to Plaintiff and the Class as required by the ECOA;

  c. Whether Defendant violated the Illinois CFA by failing to provide notice of adverse action to Plaintiff and the Class as defined by the ECOA;

  d. Whether Defendant violated the Illinois CFA by sharing nonpublic personal information without giving customers notice of Defendant's privacy policy and notice of the right to opt out of Defendant's privacy practices;

  e. Whether Plaintiff and the Class were harmed by Defendant's conduct; and

    f.    Whether Plaintiff and the Class are entitled to injunctive and compensatory relief, to include the costs of bringing this lawsuit.

64. Plaintiff's claims are typical of the claims of the Class. Defendant uniformly received completed credit applications, obtained consumer reports about the applicants, failed to provide financing for the requested credit, failed to make required privacy disclosures, and failed to provide FCRA and ECOA notices of adverse action. Defendant's conduct uniformly harmed Plaintiff and the Class and invited uniform claims of relief.

65. Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class he seeks to represent. Plaintiff will protect the interests of the Class because his interest in justice and the relief sought are aligned with the Class.

66. Plaintiff hired attorneys that are skilled and experienced in class actions and in the litigation of similar class cases. Plaintiff's attorneys are an adequate class counsel because Plaintiff's attorneys can protect the interests of the Class.

67. A class action is the superior method for deciding this controversy because common questions of law and fact predominate questions that affect only individual members of the Class; and because the likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

68. Based on the foregoing, a class action is an appropriate method for the fair and efficient adjudication of the controversy.

**COUNT I**
**(15 U.S.C. § 1681 *et seq*.)**
**Fair Credit Reporting Act**
**("FCRA")**

69. All previous paragraphs are incorporated herein.

70. Defendant is a "person" as defined by the FCRA.

71. Plaintiff and the Class are each a "consumer" as defined by the FCRA.

72. WORLD KIA JOLIET violated the FCRA at 15 U.S.C. § 1681m, *et seq.*, in a manner including but not limited to the following:

   a. Defendant failed to provide notice of adverse action to loan applicants whose consumer credit reports were evaluated by Defendant and whose credit applications were denied by Defendant because Defendant's finance department declined to provide the requested financing and declined to forward the applications to potential lenders; and

   b. Defendant failed to provide notice of adverse action to loan applicants whose consumer credit reports were evaluated by Defendant and whose credit applications were denied by Defendant because Defendant's finance department failed to arrange financing after forwarding the applications to potential lenders.

73. WORLD KIA JOLIET willfully violated the FCRA because Defendant's agents understand the FCRA's requirements regarding consumers who are denied credit through its finance department. Despite this knowledge, Defendant's agents failed to give Plaintiff and the Class notice of adverse action that is required by the FCRA. Defendant is aware of systems, procedures, and employee training that ensure compliance with the FCRA. Defendant's agents failed to avail themselves of such systems, procedures, and training.

74. WORLD KIA JOLIET's conduct shifts the costs of transparency onto the consumer. Without adverse action notice – Defendant's customers have no reasonable basis for knowing who denied their application, the reasons for denial, and notice of possible error. Plaintiff and every member of the Class have a demonstrable need for credit. Adverse action notice provides important

information about the creditworthiness of Plaintiff and the Class – which is a precondition for Plaintiff and the Class to obtain the credit they need.

75. As a result of Defendant's conduct, Plaintiff and the Class are improperly burdened with the expense of discovering the nature of Defendant's conduct. These expenses include costs for credit monitoring, internet and cell phone charges, legal services and the hiring of experts, time, and emotional distress connected to Defendant's disregard of consumer rights.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court:

A. Award damages, including compensatory, statutory, and punitive damages, to Plaintiff and the Class in an amount determined at trial;

B. Enter an Order for Defendant to provide Plaintiff and the Class the notice and disclosures complained of herein;

C. Award Plaintiff expenses and costs for the suit, including reasonable attorney fees to the extent provided by law;

D. Award pre-judgement and post-judgment interest to the extent provided by law; and

E. Award such further relief as the Court deems appropriate.

**COUNT II**
**(15 U.S.C. § 1691 *et seq.*)**
**Equal Credit Opportunity Act**
**("ECOA")**

76. All previous paragraphs are incorporated herein.

77. Defendant is a "creditor" as defined by the ECOA.

78. Plaintiff and the Class are each an "applicant" as defined by the ECOA.

79. WORLD KIA JOLIET violated the ECOA at 15 U.S.C. § 1691(d), *et seq.*, in a manner including but not limited to the following:

    a. Defendant failed to provide notice of adverse action to loan applicants whose consumer credit reports were evaluated by Defendant and whose credit applications were denied by Defendant because Defendant's finance department declined to provide the requested financing and declined to forward the applications to potential lenders; and

    b. Defendant failed to provide notice of adverse action to loan applicants whose consumer credit reports were evaluated by Defendant and whose credit applications were denied by Defendant because Defendant's finance department failed to arrange financing after forwarding the applications to potential lenders.

80. WORLD KIA JOLIET's credit applicants have a right to know whether Defendant has discriminated against them with respect to any aspect of a credit transaction. Defendant's conduct shifts the costs of transparency about credit transactions onto the consumer, which undermines public policy on discrimination in the banking system. As a result, Plaintiff and the Class must undertake the costs of discovering the nature of Defendant's conduct and must burden the emotional distress associated with Defendant's disregard of consumer rights.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the Court:

A. Award damages, including compensatory and punitive damages, to Plaintiff and the Class in an amount determined at trial;

B. Enter an Order for Defendant to provide Plaintiff and the Class the notice and disclosures complained of herein;

C. Award Plaintiff expenses and costs for the suit, including reasonable attorney fees to the extent provided by law;

D. Award pre-judgement and post-judgment interest to the extent provided by law; and

E. Award such further relief as the Court deems appropriate.

## COUNT III
### (815 ILCS 505 *et seq*.)
### Illinois Consumer Fraud and Deceptive Business Practices Act
### ("Illinois CFA")

81. All previous paragraphs are incorporated herein.

82. Defendant is a "financial institution" as defined by 12 C.F.R. § 1016 *et seq.*

83. Defendant's conduct occurred in "trade" or "commerce" as defined by the Illinois CFA.

84. Plaintiff and the Class are each a "customer" as defined by 12 CFR Part 1016 *et seq.*

85. WORLD KIA JOLIET violated the Illinois CFA at 815 ILCS 505/2 because Defendant's practice was "deceptive" and "unfair" under Illinois law, FTC interpretations, and federal court rulings in a manner including but not limited to the following:

   a. Defendant failed to provide notice of a privacy policy and the right to opt out of Defendant's privacy practices as required by 12 CFR Part 1016 *et seq.*, and in doing so, Defendant concealed material facts about credit transactions and Defendant's treatment of nonpublic personal information;

   b. Defendant failed to provide FCRA and ECOA notice of adverse action to loan applicants whose credit applications were denied by Defendant because Defendant's finance department declined to provide the requested financing and declined to forward the applications to potential lenders, and in doing so, Defendant concealed material facts about the credit transactions;

   c. Defendant failed to provide FCRA and ECOA notice of adverse action to loan applicants whose credit applications were denied by Defendant because Defendant's finance department failed to arrange financing after forwarding the

    applications to potential lenders, and in doing so, Defendant concealed material facts about the credit transactions;

  d. Defendant intended for Plaintiff and the Class to rely on the concealment of material facts about credit transactions and Defendant's treatment of nonpublic personal information;

  e. Plaintiff and the Class relied on Defendant's concealment of material facts; and

  f. Defendant's conduct was materially misleading from the perspective of a reasonable consumer, caused substantial injury, violated established public policy, and was unethical and oppressive.

86. WORLD KIA JOLIET's management understands that consumers often avoid credit applications because of their negative impact on creditworthiness and privacy. To overcome this barrier to selling cars, Defendant promotes a finance application that states, "Only Last 4 of SSN Required," "Safe & Secure," and "Does NOT Affect Your Credit." iPreCheck's terms of use state, "any credit pulls will be soft pulls, which will not affect your credit score."

87. Despite Defendant's credit application promotions, Defendant's sales agents engage in a credit application process that affects consumer creditworthiness and privacy. In doing so, Defendant failed to provide Plaintiff and the Class privacy disclosures and adverse action notices. Defendant's omissions concealed the negative effects that Defendant's application process had on Plaintiff and the Class.

88. Defendant's management knows or should know that Defendant's credit practice was misleading to Plaintiff and the Class. Defendant has received complaints on social media about how Defendant's credit practice is misleading. Additionally, given Defendant's regional influence

in the Chicago metropolitan area, it is implausible that Defendant's management is unaware of similar complaints in media, the public record, or by industry association.

89. Defendant's application process is especially harmful because hard inquiries remain visible on consumer credit reports for years – which creates reputational damage. Lenders, employers, and other users of credit reports can see when Plaintiff and the Class have not received requested credit and may not be considered creditworthy. Additionally, hard inquiries affect creditworthiness by lowering the consumer's credit score.

90. Defendant's application process is also harmful because Plaintiff and the Class are a group of consumers with a demonstrable need for credit. Defendant's failure to provide adverse action notice is an obstacle to obtaining needed credit because it conceals credit reporting errors and whether the applicant has been treated fairly. Defendant's failure to provide adverse action notice is compounded by Defendant's failure to disclose its privacy practices – which further conceals the nature of the transaction and the sharing of nonpublic information.

91. As a result of Defendant's conduct, Plaintiff and the Class are unfairly burdened with the expense of discovering the nature of Defendant's conduct. These expenses include costs for credit monitoring, internet and cell phone charges, legal services and the hiring of experts, time, and emotional distress associated with Defendant's disregard of consumer rights.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests that the court:

A. Award damages, including compensatory and punitive damages, to Plaintiff and the Class in an amount determined at trial;

B. Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein;

C. Award Plaintiff expenses and costs for the suit, including reasonable attorney fees to the extent provided by law;

D. Award pre-judgement and post-judgment interest to the extent provided by law; and

E. Award such further relief as the Court deems appropriate.

DATED: October 28, 2022               Respectfully Submitted,

                                      By: /s/ Jason Thomas

                                      **ADVOCATE ATTORNEYS, LLP**
                                      Jason Thomas, Esq.
                                      1629 K St NW, Ste 300,
                                      Washington, DC 20006
                                      www.advocateattorneys.com
                                      jthomas@advocateattorneys.com
                                      Telephone: (708) 294-3900
                                      ARDC# 6323343

                                      **ADVOCATE ATTORNEYS, LLP**
                                      Marc Dann, Esq.
                                      1500 Madison Ave.
                                      Cleveland, OH 44104
                                      Telephone: (202) 9235-6991
                                      Email: mdann@advocateattorneys.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing, **PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**, was served on October 28, 2022, upon counsel of record via e-mail as follows:

Ira M. Levin
Danielle J. Gould
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
E-mail: ilevin@burkelaw.com
dgould@burkelaw.com

                                                                                                                                  By: /s/ Jason Thomas
                                                                                                                                  One of Plaintiff's attorneys